# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

DAMARY ALEJANDRA RODRIGUEZ FLORES,

           Petitioner,

v.                                           CIVIL ACTION NO. 2:26-cv-00044

CHRISTOPHER MASON, et al.,

           Respondents.

## MEMORANDUM OPINION AND ORDER

This case does not arise in isolation.

The court is aware that similar seizures and detentions are occurring increasingly across the country.[1] Individuals are stopped during ordinary civilian activity, taken into custody for civil immigration purposes, and confined in local jails without prompt hearings, without individualized findings, and often far from counsel, family, or community. That broader context matters, especially when assessing constitutional risk.

---

[1] *See e.g., L.R. v. Noem*, No. 2:25-CV-02019-RFB-BNW, 2026 WL 161605, at *11 (D. Nev. Jan. 21, 2026) ("This Court has received an influx of similar [immigration habeas] cases over the last few months . . . ."); *Garcia v. London,* No. 8:25CV624, 2025 WL 3268705, at *2 (D. Neb. Nov. 24, 2025) (Petitioner filed a habeas petition "based on her assertion that she was entitled to but has not been provided with a bond hearing, making her continued detention unlawful."); *Cordoba v. Knight*, No. 1:25-CV-00605-BLW, 2025 WL 3228945, at *9 (D. Idaho Nov. 19, 2025) (Noting that "courts across the country have ordered the immediate release of detainees in similar situations" and then ordering release of a petitioner who challenged his detention without a bond hearing) (collecting cases); *Lopez v. Olson*, No. 3:25-CV-654-DJH, 2025 WL 3217036, at *4 (W.D. Ky. Nov. 18, 2025) ("Therefore, the Court concludes that detaining [petitioner] without giving her a bond hearing violates due process."); *Rashid v. Trump*, No. 2:25-CV-732, 2025 WL 3210955, at *9 (D. Vt. Oct. 27, 2025) (rejecting the idea that only detention that is "indefinite" or "potentially permanent" violates due process); *Escobar v. Perry*, No. 3:25CV758, 2025 WL 3006742, at *13 (E.D. Va. Oct. 27, 2025) ("Petitioner is subject to the due process protections of the Fifth Amendment, and his detention without a bond hearing violates those protections."); *Garcia v. Raybon*, No. 2:25-cv-13086, 2025 WL 2976950, at *4 (E.D. Mich. Oct. 21, 2025) ("And because [petitioner] has been detained without having received such a bond determination hearing, he is in federal custody in violation of federal law.").

Of course, this court does not supervise immigration enforcement. It does not adjudicate removability. It does not weigh policy choices committed to the political branches. This court does, however, maintain a narrow, unavoidable duty to ensure that custody itself is lawful.

It is not the vigilance of detainees or the speed of their lawyers that determines what is and what is not constitutional. Nor does the United States Constitution require habeas petitions to activate its protections. Liberty is not a prize for procedural persistence. It is the baseline.

That is why the court's duty to scrutinize custody is more acute than ever, as liberty is *administratively* restrained. Every day it happens—outside the criminal process, in facilities designed for punishment, and lacking the ordinary safeguards that must accompany arrest and prosecution.

And while judicial restraint is often the right answer in a system of checks and balances, it does not mean that courts should subscribe to judicial passivity. Instead, courts must draw and hold clear lines in every case. Here that line is a simple proposition: the government may not confine a person in a jail without promptly justifying that confinement before a neutral decisionmaker in a manner the person can meaningfully access.

I.    BACKGROUND

Petitioner Damary Alejandra Rodriguez Flores is a citizen and national of Honduras and a noncitizen resident of the United States. [ECF No. 1, ¶¶ 8, 14]. Petitioner has been living in Charlotte, North Carolina, where her husband is employed by his brother, a United States citizen. *Id.* ¶ 17.  On January 13, 2026, Petitioner and her husband were arrested and detained by Immigration Customs and Enforcement ("ICE") officers while travelling on Interstate 77.[2] *Id.* ¶

---

[2] Petitioner was travelling with two other persons who were also stopped, arrested, and detained by ICE officers. One of those detainees, Mr. Antony Segundo Larrazabal-Gonzalez filed a petition for habeas corpus in this court. *See* Civil Action 2:26-cv-00049. On January 28, 2026, the court granted his petition.

14–16. Since her arrest, Petitioner remains detained at South Central Regional Jail in Charleston, WV. *Id.* ¶ 8.

On January 20, 2026, Petitioner filed her Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. *Id.* ¶ 1. Petitioner seeks "immediate release, or in the alternative, an order directing Respondents to provide her with a constitutionally adequate custody hearing before a neutral decisionmaker with authority to assess the necessity of detention and to order release on appropriate conditions." *Id.* ¶ 2. Her confinement, Petitioner alleges, violates her Fifth Amendment Due Process Rights, the Immigration and Nationality Act, the Administrative Procedures Act, the Equal Protection Clause of the Fifth Amendment, and the Suspension Clause. *Id.* ¶¶ 37–68.

Petitioner also filed an Expedited Motion to Set a Show Cause Hearing, [ECF No. 5]. On January 21, 2026, the court granted the motion, [ECF No. 10]. The court stayed any removal proceeding that would take Petitioner out of the district, and the court set a briefing schedule and a hearing for January 27, 2026. On January 24, 2026, Respondents timely responded to the Petition and moved for dismissal based on several legal theories.

Primarily, the federal Respondents[3] ("the Government") argue that the Petition should be dismissed because 8 U.S.C. §§ 1252(e)(3), 1252(g), and 1252(b)(9) bar this court from exercising jurisdiction. [ECF No. 15-1, at 9]. The Government also argues that the Petitioner has failed to exhaust her administrative remedies, that the Petitioner lacks standing to bring her Administrative Procedures Act claim, that the Petitioner's detention is mandatory, and that the Petitioner has received sufficient due process under the INA.[4]

---

[3] The state Respondent, Superintendent of South Central Regional Jail Christopher Mason, makes no argument other than he is a "nominal" Respondent in this matter. [ECF No. 14].

[4] The Government alternatively argues that if the court grants the petition, the "only relief" the court should order is a bond hearing. [ECF No. 15-1, at 25–26].

3

## II. LEGAL STANDARD

"A federal court may grant habeas relief 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999) (quoting 28 U.S.C. § 2254(a)); *see also Torrence v. Lewis*, 60 F.4th 209, 213–14 (4th Cir. 2023). The "heart of habeas corpus" is the challenge to a petitioner's confinement (or the duration of her confinement), where she seeks "immediate release or a speedier release from that confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973). After considering the Respondent's arguments, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. DISCUSSION

On January 27, 2026, the court held a show cause hearing on the Petition for Writ of Habeas Corpus. [ECF No. 21]; *see also* 28 U.S.C. § 2243 (A "judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted."). Counsel for the state Respondent, counsel for the federal Respondents, and counsel for the Petitioner were present. For the following reasons, the Petition is **GRANTED**.[5]

### A. The Burden of Justifying Custody

The court began the January 27, 2026 hearing with civil action 2:26-cv-00049, *Larrazabal-Gonzalez v. Mason, et al.* There the court informed the parties of the hearing's sole purpose: to

---

[5] This court has jurisdiction. First, Petitioner petition may appropriately be heard in a district court outside of the D.C. district court because her claim is specific and tailored to her own detention. Therefore, 8 U.S.C. § 1252(e)(3) does not preclude this court's jurisdiction. Second, 8 U.S.C. § 1252(g) only governs three discrete actions taken by the Attorney General, none of which apply here. Nor is the statute so broad as to strip courts of jurisdiction for every action that relates to or "arises from" an immigration detention. *Jennings v. Rodriguez,* 583 U.S. 281, 294 (2018). Lastly, the Fourth Circuit has already addressed the applicability of 8 U.S.C. § 1252(b)(9). That provision only applies to the "review of an order of removal under" 8 U.S.C. § 1252(a)(1). *Casa De Maryland v. U.S. Dept of Homeland Security*, 924 F.3d 684, 697 (4th Cr. 2019) (citing *INS v. St. Cyr*, 533 U.S. 289, 313 (2001)). Petitioner does not ask the court to review a removal order; therefore, section 1251(a)(1) does not bar jurisdiction.

4

determine whether Petitioner's arrest and continued detention complied with the Constitution of the United States. That, the court said, was the singular inquiry when a petition for writ of habeas corpus challenges an unlawful detention. The court further stated—without objection—that the burden of proof rested on the Government to justify custody. Because the Government is the custodian and controls the relevant information, it bears the burden to produce evidence and articulate lawful authority justifying continued detention once a credible due process challenge is raised.

The Government faced the same burden in this Petitioner's case, and the hearing on Ms. Flores's Petition immediately followed. Ms. Flores was travelling on Interstate 77 with Mr. Larrazabal-Gonzalez in the same car. The same officers stopped the car, arrested its occupants, and detained them. Ms. Flores and Mr. Larrazabal-Gonzalez were placed in the custody of ICE and transported to South Central Regional Jail.

Because the same officers stopped and arrested both petitioners, the court's step-by-step inquiry in Mr. Larrazabal-Gonzalez's hearing produced answers equally applicable to Ms. Flores's case. That is, in response to each inquiry, the Government would have made the same answer—it could provide no information or evidence justifying officers' actions. The Government presented no evidence about the stop and arrest in either case. In the interest of clarity and completeness, the court incorporates by reference the transcript in civil action *Larrazabal-Gonzalez v. Mason, et al,* 2:26-cv-00049. In summary, the Government concedes that it had no evidence to justify the stop or arrest of the petitioners travelling together.

The same is true of both cases: the Government did not meet its burden.

## B. The Government's Failure to Present Evidence

The Government presented no witnesses. It offered no affidavits. It introduced no testimony. The Government put no one on the stand: not an arresting officer or an immigration officer or a custodian or a decisionmaker. It offered no warrant, of any kind, nor did it offer evidence that any warrant was sought or obtained. And despite the court's inquiry, the Government could produce no evidence that the Petitioner presented circumstances of exigency, flight, or necessity. In fact, the Government could not show that the Petitioner had even been evaluated under that criteria or any other criteria.

Basic questions about Petitioner's detention were also left unanswered. When asked who ordered the stop, why the vehicle was stopped, what legal authority was invoked, what facts were known at the time, what statements were made, what notice was given, what process was available, and when any hearing would occur; the Government repeatedly answered: "I don't know."

Instead, the Government relied on documents attached to its brief, two Department of Homeland Security records. The Government moved for their admission, and the court granted the Government's motion. [ECF No. 22] (Exhibit list from the hearing).

Even considering the most favorable view of the Government's position, the record shows only that at some time, for some reason, an immigration officer checked boxes on a form indicting unlawful presence. That form does not describe the circumstances of the stop and does not establish that any neutral decisionmaker reviewed or approved detention. Without more, the Government falls short of proving its justification for detaining Petitioner, nor can the Government overcome Petitioner's habeas challenge of an unlawful detention.

Habeas corpus is not an abstract inquiry into statutory authority, as the Government appeared to argue at the hearing. Rather, habeas corpus is a concrete demand that the jailer explain

the jail. When the Government confines a person, it must be prepared—when called upon—to show who seized her, why, how, and under what authority. A statute does not execute itself. Detention is not self-justifying. Courts do not infer constitutionality from silence. Courts do not presume lawfulness when no evidence is offered to support it.

Here, the Government presented minimal evidence. This was not a technical failure. It was a complete one.

### C. Due Process

At the hearing, the Government conceded that any person within the boundaries of the United States is entitled to due process under the Constitution. That concession is correct.

The Fifth Amendment of the Constitution promises freedom and protection to all persons. "No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This core principle of procedural due process is that detention triggers the right to a prompt hearing to test its legality. In short, it is unconstitutional for the Government to detain a person without explanation, without a hearing, without notice, or without any means of challenging that detention.

Here, that is exactly what the Government did. After federal officers arrested the Petitioner, she was held in a state jail. A week passed before Petitioner could obtain counsel and counsel could file her habeas petition.[6] Three days after her arrest, the Government appears to have issued Petitioner a Notice to Appear in an immigration court on January 29, 2026. But that court date was

---

[6] Of course, the Petitioner does not have constitutional protections *only* when she files a habeas petition. That distinction—that constitutional rights do not only protect persons when a lawsuit has been filed—is an important one. It is because of the many lawsuits surrounding ICE actions (including arrest, detention, and other enforcement actions) that I cannot view this case outside of the national, political, and legal context. Across the country, federal immigration enforcement operations have sparked controversy and concerns about constitutional overreach. In Minneapolis, federal immigration and border agents have been involved in multiple fatal shootings of U.S. citizens. Those events have prompted widespread protest and calls for accountability.

more than two weeks after her initial detention, in a New Jersey immigration court, nearly 500 miles away. Meanwhile, Petitioner remains detained in a local jail, and the Government presented no evidence that any evaluation has justified her *current* detention.

This sequence is indistinguishable in principle from holding a citizen on a criminal charge without arraignment or bail hearing. The Constitution does not tolerate such delay simply because the detained person is subject to immigration law. In fact, the Petitioner's immigration status does not burden the relevant constitutional protections.

Despite what some may have been led to believe, immigrants illegally in this country enjoy protections guaranteed by the Fifth Amendment. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). *See also Pyler v. Doe*, 457 U.S. 202, 210 (1982) ("Indeed, we have clearly held that the Fifth Amendment protects aliens whose presence in this country is unlawful from invidious discrimination by the Federal Government."); *Reno v. Flores*, 507 U.S. 292, 307 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Here, Petitioner is a citizen and national of Honduras. Still, she is guaranteed protections under the U.S. Constitution. Petitioner has lived in the United States with her husband of twelve years, and she maintains community ties and familial relationships with lawful permanent residents. The Government presented no evidence that she has a criminal record, nor did the Government present evidence that she is a danger to the community or a flight risk.

This unsupported detention-first and hearing-later practice finds no support in the Constitution. "Freedom from imprisonment—from government custody, detention, or other forms

8

of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The Constitution does not tolerate what would be plainly unlawful in the criminal context simply because the detention is labeled civil. Nor does the Constitution withhold its protections when a person is an immigrant.

### D.  Remedy

During the hearing, the Government requested additional time to present evidence, affidavits, and witnesses. The court denied that request. Habeas corpus does not permit detention to continue while the Government justifies its actions after the fact.

Because the Government failed to meet its burden to justify custody, continued detention cannot stand. There is no factual record to remand. There is no process to await. The Constitution requires release.

Therefore, I **FIND** that Petitioner's detention is unlawful.[7] Because the Constitution demands due process, the Petitioner must be released.

### IV.    CONCLUSION

In our society, freedom is the constitutional default.[8]

When the Government confines a person in a jail and, when called upon, cannot articulate the facts or authority justifying that confinement, the detention violates the Fifth Amendment. Habeas corpus exists precisely for this moment.

---

[7] For the reasons already stated, Petitioner's civil detention violates due process and also satisfies the factor test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, Petitioner has a significant private interest in not being detained, and her continued detention further increases her risk of continuously and erroneously depriving her of freedom, especially as she has been afforded no opportunity to be heard by an immigration decisionmaker. Lastly, while the Government has an interest in immigration, its burden in detaining immigrants with no further process is high.
[8] *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Therefore, the Petition for Writ of Habeas Corpus, **[ECF No. 1]**, is **GRANTED**. Petitioner is **ORDERED** released immediately from civil immigration custody. Respondents are **PROHIBITED** from re-arresting and detaining Petitioner absent significant change in circumstances to justify detention or subject to the determination of an Immigration Judge.

Further, the Immigration Court is hereby **NOTIFIED** that Petitioner Damary Alejandra Rodriguez Flores has only been released pursuant to this order. It is unlikely that she will be able to attend her hearing set for the morning of January 29, 2026. The United States Attorney's Office is **ORDERED** to notify the Department of Homeland Security, Immigration and Customs Enforcement, and the Immigration Court that the Petitioner's nonappearance is the result of her continued unlawful detention not the result of any unlawful action by the Petitioner.

The court has additionally considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller–El v. Cockrell,* 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee,* 252 F.3d 676, 683–84 (4th Cir. 2001). The court concludes that the governing standard is not satisfied in this instance. Accordingly, the court **DENIES** a certificate of appealability.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel, any unrepresented party, and the United States Attorney's Office for the Southern District of West Virginia.

ENTER: January 28, 2026

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE